UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ESG REPUBLIC, INC., et al.,<br><br>Defendants. | No. 1:23-cv-00643-KES-CDB<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 73)<br><br>ORDER DENYING MOTION TO STRIKE<br><br>(Doc. 75) |

American Zurich Insurance Company ("American Zurich") filed a breach of contract suit against various defendants for unpaid insurance policy premiums and deductibles. Doc. 34 (Second Amended Complaint ("SAC")). Although American Zurich issued the insurance policies to ESG Republic, Inc., it contends that the other defendants are also liable for breach of contract, including through alter ego, successor liability, merger, and joint and several liability theories of liabilities. *Id.* ¶ 23.

Defendants Vensure Employer Services, Inc. ("Vensure") and WL Acquisition, LLC ("WL Acquisition") move for summary judgment.[1] Doc. 73. American Zurich opposes summary

---

[1] The parties stipulated to dismiss defendants Thorn Insurance Services LLC dba Worklogic HR Insurance Services, Bradley C. Burks, and Vensure HR, Inc., and those defendants were terminated on April 7, 2025. Docs. 98, 99. As such, the motion for summary judgment proceeds only as to Vensure and WL Acquisition (collectively, the moving defendants). WL Acquisition indicates that it was erroneously sued as WL Acquisitions, LLC. Doc. 73-1 at 1.

1

judgment and moves to strike the motion for summary judgment. Docs. 75, 88, 91. This matter is suitable for resolution without a hearing pursuant to Local Rule 230(g). Doc. 95. The Court has considered the parties' briefs, and for the reasons explained below, denies the motion to strike and grants in part the motion for summary judgment.

## I. BACKGROUND

### A. Procedural Background

On January 18, 2024, American Zurich filed a second amended complaint against defendants ESG Republic, Inc. ("ESG Republic"), ESG Republic II, LLC ("ESG Republic II"), Jeffrey D. Thorn, Vensure, WL Acquisition, and the subsequently dismissed defendants.[2] SAC. In its second amended complaint, American Zurich alleges a cause of action for breach of contract against all defendants, asserting that all defendants are liable for the unpaid insurance premiums and deductibles. *Id.* ¶ 23. American Zurich also alleges that ESG Republic and ESG Republic II are alter egos of Thorn and that the corporate veil of those entities should be pierced. *Id.* ¶¶ 14, 19. American Zurich further alleges that Vensure and Vensure HR subsequently purchased ESG Republic and ESG Republic II by forming WL Acquisition, and that Vensure and WL Acquisition are successors in interest to Thorn, ESG Republic, and ESG Republic II, and are also jointly and severally liable by agreement, pursuant to merger, or as alter egos of those entities. *Id.* ¶¶ 14, 20-22.

On November 29, 2024, Vensure and WL Acquisition filed a motion for summary judgment. Doc. 73. American Zurich filed a motion to strike the summary judgment motion on December 5, 2024. Doc. 75. In light of a pending discovery dispute conference before the magistrate judge, the Court modified the briefing schedule on the motions. Doc. 78. The magistrate judge subsequently ruled on the various discovery issues, set forth deadlines for the parties to conduct additional discovery, including the completion of depositions, and stayed briefing on the motion for summary judgment and motion to strike. Doc. 81. Vensure and WL

---

[2] On December 1, 2023, an entry of default was entered against ESG Republic and ESG Republic II. Doc. 30.

Acquisition filed an opposition to the motion to strike on December 20, 2024. Doc. 83. On January 10, 2025, the Court set a briefing schedule on the motion for summary judgment. Doc. 85. An opposition to the motion for summary judgment was filed on February 15, 2025, and a reply was filed on February 25, 2025. Docs. 88, 91, 94.

### B. Factual Background[3]

American Zurich alleges it is owed unpaid insurance premiums and deductibles pursuant to insurance policies it issued to ESG Republic. SAC ¶ 39. Although neither Vensure nor WL Acquisition was a contracting party when the insurance policies were issued, American Zurich alleges that, through a series of transactions between ESG Republic, Thorn, WL Acquisition and Vensure, Vensure and WL Acquisition became liable for the unpaid insurance premiums and deductibles. American Zurich argues that the transactions between ESG Republic, Thorn, WL Acquisition, and Vensure establish a de facto merger, as well as successor liability through agency and alter ego doctrines. Doc. 88.

On May 1, 2015, ESG Republic and American Zurich entered into three contracts: (1) Paid Deductible Agreement, (2) Specifications to Paid Deductible Agreement, which contained an American Zurich insurance policy (policy # WC109218501), and (3) Addendum to Paid Deductible Agreement. DSUF Nos. 1-2. ESG Republic and American Zurich also entered into three additional contracts on May 1, 2015: (1) Incurred Loss Retrospective Agreement, (2) Specifications to Incurred Loss Retrospective Agreement, and (3) Addendum to Incurred Loss Retrospective Agreement, which includes the Worker's Compensation policies that apply to the Incurred Loss Retrospective Agreement. DSUF Nos. 3-4. The Incurred Loss Retrospective Agreement and the Specifications to Incurred Loss Retrospective Agreement incorporate the Retrospective Rating Plan Premium Endorsement, which states that ESG Republic owes American Zurich for expenses incurred due to certain ongoing workers' compensation claims.

---

[3] The facts that follow are relevant undisputed facts unless otherwise noted and are derived from: undisputed facts submitted by the moving defendants and responded to by American Zurich (Doc. 91) ("DSUF")), additional undisputed facts identified by American Zurich to which the moving defendants did not respond (Doc. 91 ("PSUF")), and declarations and exhibits attached to the motion for summary judgment and opposition.

DSUF No. 5.

On October 23, 2017, Vensure caused WL Acquisition to be formed. Ex. G., Doc. 73-9 at 1. WL Acquisition was a wholly owned subsidiary of ESG Republic. *Id.* On January 1, 2018, ESG Republic and WL Acquisition entered into three contracts through which ESG Republic transferred assets to WL Acquisition in exchange for ESG Republic receiving all interest in the membership of WL Acquisition: (1) Contribution Agreement, (2) Assignment and Assumption Agreement, and (3) Bill of Sale. DSUF No. 6. Schedule 15(e)(ii) of the Contribution Agreement outlines the "Categories of Assumed Contract" that WL Acquisition assumed from ESG Republic, including the "First Dollar Workers' Compensation Policies" to which ESG Republic was a party in connection with its business of providing professional employer organization ("PEO") services to clients. DSUF No. 7. The Contribution Agreement also outlines the categories of "Excluded Assets" that WL Acquisition did not assume from ESG Republic, including all insurance policies of ESG Republic not included in the Contributed Assets. DSUF No. 8.

On January 31, 2018, ESG Republic and Vensure entered into a Purchase Agreement in which ESG Republic sold 75% of its membership interest in WL Acquisition to Vensure. DSUF No. 9. As part of the Purchase Agreement, ESG Republic and Vensure entered into the "WL Acquisition, LLC Amended and Restated Limited Liability Company Agreement." DSUF No. 10. ESG Republic and WL Acquisition also entered into a Security Agreement indicating that ESG Republic lent WL Acquisition $9,103,087.89 in connection with Vensure's purchase of the 75% membership interest. DSUF No. 11. American Zurich disputes that the money was actually lent. *Id.* On or around February 11, 2022, Vensure purchased additional shares in WL Acquisition. PSUF No. 29; Ex. 59, Doc. 88-2. WL Acquisition thus became wholly owned by Vensure. PSUF No. 30.

**II.   MOTION TO STRIKE**

American Zurich moves to strike the summary judgment motion on the basis that the moving defendants failed to comply with the meet and confer requirements set forth in the scheduling order and failed to produce several witnesses for deposition. Doc. 75. In opposition,

4

1  the moving defendants argue that they met and conferred in advance of the filing deadline for the
2  motion for summary judgment and that American Zurich has had ample time to conduct
3  discovery.  Doc. 83.  Briefing on the summary judgment motion was continued or stayed pending
4  the resolution of various discovery disputes, and the magistrate judge ordered additional
5  discovery, including the deposition of various witnesses.  American Zurich does not allege in its
6  opposition to the summary judgment motion that further discovery is needed for it to oppose the
7  summary judgment motion.  *See* Doc. 88.  Accordingly, to the extent that the motion to strike is
8  based on the moving defendants' failure to produce witnesses for deposition, the motion to strike
9  is denied as moot.

10  The moving defendants proffer that they sent a detailed meet and confer correspondence
11  to American Zurich prior to the filing of the motion for summary judgment.  Doc. 83.  There is
12  also no allegation that American Zurich was prejudiced due to a failure to comply with the
13  twenty-one-day meet and confer deadline.  Given the preference for resolving issues on the
14  merits, the motion to strike the summary judgment motion on the basis that the moving
15  defendants did not comply with the meet and confer deadline is denied.

16  Accordingly, American Zurich's motion to strike is denied.

17  **III.   EVIDENTIARY OBJECTIONS**

18  American Zurich raises objections to the evidence cited in support of the motion for
19  summary judgment.  *See generally* Docs. 88, 91.  The objections are "garden variety evidentiary
20  objections" such as relevancy, hearsay, foundation, and speculation.  *See Torres v. Los Angeles*
21  *Sheriff's Dept.*, Case No. CV 22-07450-MWF (MARx), 2024 WL 4720808, at *5 (C.D. Cal. Aug.
22  14, 2024).

23  "[A]t the summary judgment stage, we do not focus on the admissibility of the evidence's
24  form.  We instead focus on the admissibility of its contents." *Sandoval v. Cnty. of San Diego*, 985
25  F.3d 657, 666 (9th Cir. 2021).  That is, though such objections could prove cognizable at trial,
26  only the admissibility of the relevant facts at trial, not the form of these facts as presented in the
27  motion, matters for purposes of a motion for summary judgment.  *See id.*  Where "the contents of
28  a document can be presented in a form that would be admissible at trial—for example, through

live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* (citations omitted).

To the extent that the Court relies upon evidence to which a party objects in deciding the motion for summary judgment, the objections are overruled. To the extent the Court does not, the objections are denied as moot.

### IV. MOTION FOR SUMMARY JUDGMENT

#### A. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021) (internal quotations omitted) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 841. The parties must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The Court then views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The party moving for summary judgment must first carry its initial burden of production. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If, as in this case, the moving party would not have the burden to prove the disputed claim at trial, then it must carry its initial burden of production at summary judgment in one two ways: it must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material facts exists. *Matsushita Elec. Indus. Co.*

1  *v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
2  391 U.S. 253, 288–89 (1968).  In the endeavor to establish the existence of a factual dispute, the
3  opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient
4  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'
5  differing versions of the truth at trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the
6  "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see
7  whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting
8  Rule 56(e) advisory committee's note on 1963 amendments).  "Where the record taken as a whole
9  could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue
10 for trial.'"  *Id*. at 587.  To carry its burden of persuasion on the motion, the moving party must
11 "persuade the court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at
12 1102.

13 **B. ANALYSIS**

14 Defendants Vensure and WL Acquisition move for summary judgment on the basis that
15 there is no valid contract between them and American Zurich.  Doc. 73-1 at 2.   WL Acquisition
16 argues that, when it acquired ESG Republic, it did not acquire ESG Republic's workers'
17 compensation insurance policies from American Zurich, and that the Contribution Agreement
18 between ESG Republic and WL Acquisition expressly excluded all insurance policies that were
19 not included in the Contributed Assets.  Doc. 73-1 at 8.  In opposition, American Zurich argues
20 that the moving defendants fail to meet their burden of proof on summary judgment because they
21 do not address its alternative allegations that, through a series of transactions involving the named
22 defendants, the moving defendants are liable for ESG Republic's unpaid insurance premiums and
23 deductibles based on successor liability, merger, and/or alter ego theories of liability.  Doc. 88 at
24 2.

25 "[U]nder [...] California law, a plaintiff cannot maintain a breach of contract claim against
26 an entity who is not a party to the contract."  *Bordeaux v. Lions Gate Ent., Inc.*, No. 2:22-CV-
27 04244-SVW-PLA, 2022 WL 19076668, at *8 (C.D. Cal. Dec. 28, 2022) (internal citation and
28 quotation marks omitted); *see also Tri-Continent Internat. Corp. v. Paris Sav. & Loan Assn.*, 12

1  Cal. App. 4th 1354, 1359 (1993). Vensure and WL Acquisition were not signatory parties to
2  American Zurich's policies with ESG Republic. American Zurich also admits that WL
3  Acquisition assumed ESG Republic's First Dollar Workers' Compensation Policies but did not
4  assume other insurance policies of ESG Republic not listed in the Contributed Assets agreement.
5  DSUF Nos. 5, 7, 8. American Zurich does not establish that any of the policies listed in its
6  complaint are First Dollar Workers' Compensation policies. Further, American Zurich does not
7  oppose the moving defendants' evidence showing that Vensure and WL Acquisition did not agree
8  to assume American Zurich's policies. Accordingly, the undisputed evidence shows that Vensure
9  and WL Acquisition are not signatory parties to, and did not contractually agree to assume,
10 American Zurich's insurance policies. The moving defendants are entitled to summary judgment
11 as to American Zurich's claim in breach of contract based on the theory that the moving
12 defendants entered into or agreed to assume American Zurich's insurance policies.

13 American Zurich's opposition to summary judgment instead focuses on its alternative
14 theories of liability: that Vensure and WL Acquisition are liable under successor liability, merger,
15 and/or alter ego theories. *See* Doc. 88 at 2. Although American Zurich alleges in the second
16 amended complaint that defendants are liable under such theories, the moving defendants fail to
17 address those allegations in their motion for summary judgment. The moving defendants have
18 the initial burden of production and ultimate burden of persuasion. *Nissan Fire*, 210 F.3d at
19 1102. To carry their burden of production, the moving defendants "must either produce evidence
20 negating an essential element of the nonmoving party's claim or defense or show that the
21 nonmoving party does not have enough evidence of an essential element to carry its ultimate
22 burden of persuasion at trial." *Id.; see also Exoto Inc. v. Sunrich Co., LLC*, No. 2:21-CV-03754-
23 MEMF-JEMx, 2022 WL 17181787, at *6 (C.D. Cal. Nov. 22, 2022) (defendant met its initial
24 burden of production by demonstrating that there was an absence of evidence to support
25 plaintiff's alter ego claims by pointing to discovery responses where plaintiff admitted that it did
26 not possess any documents that would support its alter ego allegations.).

27 By not addressing the successor in interest, merger, and/or alter ego allegations in their
28 motion for summary judgment, Vensure and WL Acquisition have failed to meet their initial

1  burden. *Nissan Fire*, 210 F.3d at 1102-03; *see also Liu v. Win Woo Trading, LLC*, No. 14-CV-
2  02639-KAW, 2016 WL 3279466, at *4–5 (N.D. Cal. June 15, 2016) (defendants failed to meet
3  their initial burden on alter ego theory of liability when defendants did not address alter ego
4  allegations set forth in complaint).  To the extent the moving defendants address the successor in
5  interest allegations for the first time in their reply, the moving defendants have failed to carry
6  their initial burden with respect to those theories of liability.  *Top Brand LLC v. Cozy Comfort
7  Co. LLC*, 688 F. Supp. 3d 924, 950 (D. Ariz. 2023) (rejecting defendants' challenge to sufficiency
8  of plaintiffs' evidence when defendants raised arguments for first time in reply brief.).
9      "If a moving party fails to carry its initial burden of production, the nonmoving party has
10 no obligation to produce anything, even if the nonmoving party would have the ultimate burden
11 of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–03.  Accordingly, Vensure and WL
12 Acquisition's motion for summary judgment is denied as to American Zurich's claim that the
13 defendants are liable for the unpaid insurance premiums and deductibles under successor in
14 interest, merger, and/or alter ego theories of liability.

15 **V.    CONCLUSION**
16      For the reasons explained above:
17      1.  American Zurich's motion to strike (Doc. 75) is denied.
18      2.  Vensure and WL Acquisition's motion for summary judgment (Doc. 73) is granted in
19          part and denied in part as set forth above.

22 IT IS SO ORDERED.
23     Dated:   May 28, 2025
                                              _____
24                                            UNITED STATES DISTRICT JUDGE

9